Sam Party of New York v. Cuomo In 2018, supporters of what would become the Sam Party did two things that very few minor First, they petitioned to put on the ballot for governor a candidate not running as the Republican or the Democrat, and second, they got 50,000 votes for that candidate. Under this court's controlling precedent in Green Party, each of those acts separately and both together demonstrated a modicum of support for Sam in the New York electorate and demonstrated that Sam was not a frivolous party. New York has now raised that gubernatorial threshold to 2% of the vote or 130,000 votes. To put that in context, and while I think we can all agree that the presidential election this year was unusual turnout, 2% of the vote was 174,000 votes. The requirement in gubernatorial races has essentially tripled. It is against that background, or to use this court's language from Green Party and Lerman, it's within the totality of the electoral regime. Did the Working Families Party meet that threshold? They did, Your Honor. The results of the presidential election are that four parties met the threshold, and interestingly, the Working Families Party did so by nominating the Democrat. The Conservative Party did so by nominating the Republican. Every party that nominated anybody else failed spectacularly, and if in fact you take all of the votes cast for all of the non-Biden-Trump candidates, Joe Jorgensen for the Libertarian Party, Howie Hawkins for the Greens, and the rapper Kanye West, among others, and you add them all up, none of them even collectively got 2% of the vote. Let me ask you a question. You have extensively, as an understatement, extensively briefed this, but I'm wondering about the notion that, maybe you can orient me a little bit here, about the notion that this is a preliminary injunction that we're dealing with. Put simply, if you win, A, or if you lose, B, what is the impact of the fact that it's a preliminary injunction, and what do we do if we affirm or reverse? Thank you, Your Honor. May I take that in both directions? I think that if the court were to reverse and hold that a preliminary injunction should have been entered confirming Sam's or maintaining Sam's status as a party until a trial on the merits, there would then be an opportunity to present evidence about the burdens in more detail that the state has identified are the reasons for this law, ballot confusion of which there's no evidence. So, it would go back to the district court for trial? Absolutely, Your Honor. Yes. And I think it would do that even if the court were to affirm, although at this point Sam has lost its political party status by virtue of not competing in the election last month. Understood. Also, would you, again, help me out a little bit on the burden of, on the standard of review here. It's a little hard in this thicket to separate out that which is a finding of fact and that which is a finding of law. I think that's right, Your Honor. I think it's either the case that nearly everything that the district court found or everything that the district court found is a conclusion of law. The facts as adjudicated in the preliminary injunction hearing were essentially undisputed and the court made conclusions about the legal significance of those facts. I think all of this is reviewed de novo within the context of abusive discretion. Okay. Gotcha. I'd like to turn to Judge Park. Could I ask you, Judge Park, could I ask you about, you were saying at the beginning that the 2% was close to 170,000 or over 170,000 this year in the presidential election. And I'm just trying to understand, is your argument that the burden, the severity of the burden, how difficult it is, or I'm sorry, the difficulty of achieving that practically or I thought from papers it was more about kind of the messaging that running in a national presidential election would be inconsistent with Sam's kind of branding. And I'm just wondering if you could help me distinguish between those or reconcile. For sure, Your Honor. And it's both. So let me take it in the reverse order. The reason that a presidential election requirement is unconstitutional as applied to a one state only political party that doesn't speak to the issues of the presidency as a matter of its core messaging is a legal issue. The issue of the threshold arises in the context of either strict scrutiny and compelling interest or balancing at Anderson stage two. We are going to have to meet a gubernatorial election requirement in two years that is nosebleed high and likely fatal to everybody. And it is against that background that the court considers the presidential election requirement, which nobody has ever explained what that brings to the table at all. Although it is certainly true that the state may impose requirements to ensure that parties are not frivolous and minor fractional interests. It has one. It has the gubernatorial election requirement, which it has essentially tripled. What the presidential election requirement does is compel every New York state party, even if it is a party only in New York, to speak to the presidency. That is compelled speech, and it is unconstitutional as applied. Is it your position that it would be acceptable if it was every four years with the increased with the nosebleed high levels? Presuming just that your honor means in the gubernatorial election, yes, then yes, that is our position. Well, I mean, you can stand the nosebleed, then we're going to have to. This court held in the person case that it is constitutional to require a party that wants to run for office from Buffalo to Montauk to compete for and make a showing in the election for the state's highest office. We intend to do that and, you know, we may succeed and we may not. But it is unconstitutional to ask us to run a candidate in New York only. I'm sorry, but in that case, in the person case, we said that that, you know, a party that didn't want to run a gubernatorial candidate because they didn't want to speak to statewide issues that that was that was permissible. So why does New York state have to accommodate a party that doesn't want to run a president, but it doesn't have to accommodate a party that doesn't want to run a governor? Thank you, Judge Renacci. I think that's with respect. I'm not quite sure that's what it what happened in person is that Mr. Person wanted this court to create an entirely new law for him. He wasn't challenging the constitutionality of a provision. He was asking this court to create one. And the reason I think that matters is the court in person twice noticed, twice noted that it was a sparse record decided quickly. And I think I don't I don't like that hung up. I don't get hung up on person. But is your position that if a party said, well, we only focus on local races, we don't want to run a gubernatorial candidate, that that would be permissible or that I think the state would have to accommodate that or not accommodate that? I think the state would not have to accommodate that. And I think there's a significant difference. New Yorkers elect the governor. If a candidate ran for president in only New York, they couldn't possibly become the president. Even if they captured every vote in New York, there is a principal difference. Well, can I ask you just switching gears a little bit? So are the so if you if you don't get ballot access, you have to petition to get onto the ballot, right? Are the petitioning are the are the petitioning requirements that do those severely burden an organization's constitutional rights? Well, the petitioner requirements have recently been tripled. So I think they are also extraordinarily high. We have not contested them in this case. So you're not you're not contesting them. But to say that you face a severe burden here, wouldn't we have to say that the burden is not a requirement to get one hundred and seventy thousand votes, but it's a requirement to do the petitioning. Because if you didn't put up a candidate for president, you're the burden you would face is to do a petition to get onto the ballot. Right. No, Your Honor. And thank you. Thank you for asking. That's not what the court needs to say to say whether the burden is severe. The court needs to ask under Norman versus Reed and Schultz, this court's decision, whether it is whether it disproportionately burdens small and minor parties to have to run for president. The petition. And I think it's worth pointing out the briefing, at least below, alighted over an important issue. Being a party is not about ballot access only, although certainly that's important. Being a party is also about the ability to raise money and support the people who will go door to door to do the signature gathering, who will be the infrastructure to support the candidate. And the notion that we are no worse off if instead of having automatic ballot access and the unlimited ability to raise money, we instead have to, without that ability to raise money, go door to door for dozens or hundreds of candidates across the state is not only unsupported in the record, it's actually never happened. There is no evidence of any would be party taking the same breadth of abilities to raise money and put candidates on the ballot. And so I think with respect to the district court, the severe burden is the denial of the fundraising advantages that a party gets. Well, all of them, all of the advantages of being a party of which that is one, your honor. And the other one is automatic ballot. And I apologize. Sorry. So there's the fundraising advantages and there is the ballot access. And there's there are other burdens that this court thought were important in the Green Party case, which include being on the voter registration form, the ability to have voter will get that already. Right. I mean, in fact, because of that case, isn't there. Don't you not lose the ability to register members even if you don't qualify for automatic ballot access only by virtue, I believe, of having already become a political party. But your honor, we have the ability to to register members. But there was never for a new party. You'd never get to be on the voter registration form. In that case, it might be a burden for another party, but it's not for your client. I think that's fair, your honor. That's true. I think that for us, for the for the burdens that you're facing are the fundraising advantages and the lack of automatic ballot access, meaning the ability to petition. Well, yes, your honor, and the and the Scylla and Charybdis of being told that we can resolve that problem by either running for a race in which we want no part or being compelled to nominate the Democrat, which appears to be the state's response to this. You can solve this problem by just nominating Joe Biden or Donald Trump. It does matter for purposes of the analysis what the alternative is. And that's because I take it that's because of the particular ideology of this party. I don't think so, your honor. I don't think the burden becomes less because we happen not to want to be the Democratic Party or the Republican Party. I think the burden of the. Well, I know I'm talking about you're not wanting to be left or right, not not the Democratic, the the four pillars rather than liberalism or conservatives. I think that's certainly true, your honor. But I think the state's notion that minor parties can survive by cross nominating major party candidate is unprincipled and is an argument for compelled speech by the government, irrespective of an individual minor party's position. That would be just as true for the rent is too damn high party or the tax relief party. If I could, I'd like to turn quickly to the arguments that are being advanced for why this is OK. I think it is very quickly, counsel. You've got a minute for rebuttal. So OK. Thank you very, very quickly. The first is modicum of support. We demonstrated that by getting 50000 votes and that that is this court has already held a sufficient modicum of support. The second is ballot confusion. Well, the question I'm sorry, and I hope the presider will will not hold my questions against you finishing your your statement. But it's the question is a modicum of modicum of support every four years rather than every two years. Well, the parties have to have a modicum of support. The question of how often you gauge it is one that they get latitude on. My argument is not that it's every two years. If New York, for example, had a gubernatorial election every two years, it would be fine because it's the presidential election. All right. I want to speak briefly to the arguments on public finance, ballot confusion and voter confusion. The state can't have it both ways. They can't argue that we if we lose party status, we can still run all the same candidates. And then complain that there are too many candidates for public finance and on the ballot. The same number of candidates would be on the ballot in their version. And that's my final point. If, in fact, a minor party has support within the electorate and can run its candidates on the ballot, it's the state's job to print the ballot that lists all of the candidates that have support within the electorate. It's question begging to say we need to have fewer minor parties, so we'll have fewer minor parties. It's likewise. If we can demonstrate that we have raised enough money to qualify for public finance matching when it begins, then good. There should be public finance matching. You can't run minor parties out of the state so that you have fewer minor parties. With that, I'll take my one minute for rebuttal and I'm grateful for the court's indulgence. Thank you, counsel. We'll hear next from counsel for the to me, Mr. Halleck. Good morning, your honor. Elliott Halleck from Harris Beach here for the Board of Election Defendants. FLEs are made to support. States have an obligation to enact laws for an orderly electoral process. The case law is abundantly clear that there is no constitutional right to ballot access or recognize party status and that states can put reasonable restrictions on smaller benefits of being recognized as a party, but have opposed how states measure whether the group has a sufficient modicum of support. New York updated its election laws for the first time in 85 years to require that a recognized party demonstrate support every two years in the top of the ticket race and obtain two percent of the actual vote or one hundred and thirty thousand votes, which is one percent of the 13 million registered voters in New York. You heard before this action is premised on the theory that these requirements are so onerous that they would eviscerate all of the so-called minor parties in the New York after this year's November election. The reality is there's nothing unusual about New York's party status law, and it has always been and still is far easier to become and remain a party in the state of New York than in many other states. The Supreme Court and the other circuits have upheld far more onerous party status and ballot access. Mr. Stone discussed in the court discussion, Mr. Stone, that this election has already occurred. Is it really? Is it really common? So isn't New York pretty rare in the case where if you don't demonstrate the required support, you are no longer a party and are only a political organization and lack the fundraising advantages that the opposing counsel just mentioned? Well, the answer to that is no. New York is one of 19 states that require parties to qualify biannually every two years. New York is one of 21 states that require parties to demonstrate a minimum vote in a specific election to retain status as a party. Many states require parties to obtain higher percentages, 3 percent, 4 percent, 5 percent, 10 percent or even 20 percent in the Supreme Court's case in Janice in Georgia as compared to the 2 percent threshold in New York. Do they use do they use the presidential election? Those states that you're talking about use the presidential election as a yardstick. There are now six states that require support in a presidential election to retain party status, including Arkansas, Iowa, Kentucky, Maryland and Washington. So the reality is that New York is hardly an outlier in its party qualification laws. And the other four circuits that have looked at a presidential requirement status have all upheld that requirement, have all said that it's not a severe burden. And in every one of those cases, the percentage of the vote that you were required to get was equal to or higher than what New York currently requires. Perhaps for me, you could you could tell me the word lawyers use words strangely, sometimes severe burden. What's again, what's the yardstick? How do we do this? It's certainly burdensome. How do we decide under the laws as it is now? How do we decide whether the burden is severe or not? What's the yardstick? Well, the yardstick for that was actually just announced two months ago by the Second Circuit in the Libertarian Party versus Lamont case where the court adopted the Sixth Circuit statement in the Grimes matter that the hallmark of a severe burden is virtual exclusion from the ballot. So what we have here, the election has already happened. We know that plaintiff's predictions have proved to be false of the smaller parties that ran a presidential candidate in this year's election. Some of the so-called minor parties not only met this threshold, they exceeded it by a wide margin. The Working Families Party, the other party to the district court decision, obtained three hundred and eighty six thousand votes on its presidential line, more than double the amount it needed. Other parties didn't do so well. Sam was the only recognized party in New York that chose to not run a presidential candidate, left its ballot space blank. So as it stands now, there are currently four recognized political parties in the District Court that have not run a presidential candidate in this year's election. And they're going to try again in two years. So Sam has argued that for the parties that actually ran a candidate in this year's presidential election, but didn't fare very well, that the law is working as intended and those parties are properly decertified. However, Sam, who didn't even try, as it should be entitled to maintain its party status. This is Judge Park. Can I ask you about the reason for the presidential requirement? I understood the motivation in part, at least to be that it was, you know, every four years was too far apart and presidential elections in between. But your adversary is that the presidential election introduces, I guess, substantive, I guess, speech requirements that are different in kind than the gubernatorial. Can you speak to that? Sure. As you mentioned, the presidential requirement is included because the state has decided, like many other states, that it is going to measure support biannually. So in several election cycles, the way that the elections work, there is no other 2020 elections other than the presidential race. Also, the presidential race is obviously the one that garners the most interest, garners the most votes and is really the best measure of party's true support. So that those are among the reasons why there's the presidential. Well, it's not really the best measure, right? So if you have a state based political party, they are bigger players in gubernatorial elections, aren't they? I mean, the ones that qualified in the this election were parties that nominated a candidate of another party who was already a nominee of one of the two major parties. So why isn't it a better measure of support for state based political parties, their performance in a state based race? Well, I think the district court's findings are really important for this court to hear, in that SAM is not an organization, as it says, that is only interested in local politics or state issues. Their own motion papers include the declaration of Scott Mueller, who talks about the national SAM movement. SAM's website discusses ambitions to place candidates in all 50 states from dog catcher to president. So is that is that necessary to the conclusion here? So let me ask you, if it were true, I understand you dispute it, but if it were true that SAM is only interested in New York state, would that make a difference to the outcome of this case? No, it doesn't. States are not required to tailor their election laws to the chosen strategy of the party. So what we have here is, I mean, every circuit that has looked at this precise issue has said that it is acceptable for a state to condition retaining party status based on performance in a presidential election and that it's not a severe burden on the party. I know, but you were just saying that the presidential election performance is the best measure of public support. But if you think about the actual performance of the parties, you know, the conservative party or the Working Families Party, they can meet the threshold of the nominee, the Republican or the Democrat. But to actually figure out whether they have support in New York state, that the gubernatorial election where they might nominate someone different from the Republican or the Democrat seems to me that it might be a better measure of support for those parties. And I'm just asking why you don't think that that's correct. I think it's a measure in the cycles where there is actually a gubernatorial election, but many of the cases. Are you saying that I'm sorry to interrupt, but you're saying that gubernatorial may be better, but but presidential is good enough. I'm saying that the presidential requirement in the years that there is no other statewide race is the only logical pick for there to be a measure of support. So the state has said on a measure of support every few years. The case law is abundant in saying that the political fortunes, the fluidity of party support changes very rapidly. And New York is one of many states that has now said we're going to measure a party support every two years as opposed to every four years. And there is no other statewide race in certain election cycles, including in this year's 2020 race, upon which to measure support. While the gubernatorial election in the years that those are run every four years is certainly an adequate measure, the presidential election is not only a proper one as being the top of the ticket one that really measures the party support. It's the only one that's available. Excuse me. You have a minute left. OK, so I want to make another distinction between party status and ballot access, and that's something that was discussed earlier as well. Non-parties still have ballot access for the candidates that they want to run through independent nominating petitions. There is no irreparable harm to a party that chooses to forego party status. Sam's argument that its petition requirements would be burdensome. Those fail under the Supreme Court precedent in Janet's v. Law in Georgia that required parties to receive 20 percent of the vote in the presidential or gubernatorial election while non-parties can petition to get on the ballot. What about what about the fundraising advantages that parties have that are denied to non-parties? Case law has also discussed all of the arguments that Sam has raised in this case have been raised and rejected in the other cases where the presidential requirement was They raised the issue about it being harder and then being required to put in further effort and spend more money to get access to the ballot if they didn't have party status. Those are not sufficient reasons. Those do not constitute a severe burden that will prevent the. But you're saying under under other circuit law, you're not citing a Supreme Court case for that. Well. The Supreme Court has said that for non-discriminatory laws, the state is only required to submit sufficiently weighty justifications for imposed on somebody's right. The property interests that we set forth are avoiding ballot clutter, avoiding voter confusion, avoiding frivolous candidacies and avoiding funding frivolous candidacies. Those have been recognized and upheld over and over again by the Supreme Court. The Supreme Court has also held that the state is not required to articulate the harm in the legislative history or wait for it to occur to enact reasonable and non-discriminatory laws. To get public funding, those minor parties have to raise a certain amount of money on their own. And doesn't that show that they have a level of support that the state wouldn't be funding frivolous candidacies? Parties and candidates will have access under New York law. New York just made a hundred million dollars of public funds available every year to fund candidates. Now, the requirements to tap into that funding are really not very high, particularly for a group that is only running in local races. I mean, we're talking about, for assembly people, six thousand dollars in contributions from seventy five donors. If you are a recognized party. You're eligible for campaign finance for both the primary election and the general election itself, whereas independent bodies are only entitled to public funding for general election. So whatever debate there is about the amount of funding that will ultimately go to a candidate of smaller parties, the potential is that there can be quite a lot because the state has really made it relatively easy for a candidate to qualify for public funding. Thank you, counsel. We'll hear from Mr. Stone for a minute of rebuttal. Thank you, your honors. I will, of course, be brief. I'd like to first respond to Judge Menashe's point about public finance. Just to clear one thing up, the public finance program, when it goes into effect, will not fund parties. It will fund candidates, whether they're running for a party or not. The reason that independent bodies will get funding in general elections, not primaries, is that independent bodies don't have primaries. But the system is agnostic as to whether you are a party candidate or not. And then second, into the most important point of what brings us together today. The point of gauging any of these regulations is what happens when somebody fails. What does it indicate? And to Judge Menashe's point about the presidential election requirement, the question for this court is whether failing to get 2 percent of the presidential vote would indicate a lack of a modicum of support. The question is not whether getting 30 percent of the presidential vote indicates support. Of course it does. The question is, if a minor party that exists in only one state doesn't want to run the Republican or the Democrat, does the fact that 2 percent of the voters of New York won't support their one state only presidential dead end candidate mean that that party lacks support in the electorate? The answer to that is clearly no. And therefore, in holding otherwise, the district court erred. Thank you, Your Honors. Thank you both. We'll take the case under advisement. The last case for today, United States versus Garcia-Hernandez, is on submission. So that's it for today. I'll ask the courtroom deputy to adjourn. Court is adjourned.